UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BATSHEVA SHOHAM**, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**ISLAMIC REPUBLIC OF IRAN**, *et al.* )<br>)<br>Defendants. )<br>) | Civil No. 12-508 (RCL) |

## MEMORANDUM OPINION

This action was brought by Mrs. Batsheva Shoham against the Islamic Republic of Iran ("Iran"), the Syrian Arab Republic ("Syria"), and other defendants pursuant to the updated state-sponsored terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. Mrs. Shoham now moves for entry of default against six defendants based on service of the complaint in *Pilant v. Islamic Republic of Iran*, 11-cv-1077 on those defendants. *See* Pl.'s Default Mot., ECF No. 14. She also moves for authorization of substitute service on three defendants outside of their home country of Iran. *See* Pl.'s Service Mot. ECF No. 15. Finally, she responds to Judge Jackson's Order to show cause why her case should not be dismissed for want of prosecution. Pl.'s Resp. to Order, ECF No. 17. For the reasons given below, the Court will DENY Mrs. Shoham's default motion, will GRANT her service motion, and will find that she has satisfied Judge Jackson's show cause order.

I.   BACKGROUND

Mrs. Shoham alleges that she was driving in the West Bank with her five-month old son, Yehuda Shoham, when they were ambushed by members of the Al-Aqsa Martyrs Brigade, a

terrorist group. Compl. ¶ 23, ECF No. 3. One of the terrorists' stones struck young Yehuda, causing a severe brain injury and, after a week of hospitalization, his death. *Id.* ¶ 24.

In 2011, Mrs. Shoham joined with victims of similar attacks and their families to bring an action against Iran, Syria, and other defendants under the FSIA's state-sponsored terrorism exception. *See* Compl., *Pilant*, ECF No. 3, (D.D.C. June 9, 2011). The *Pilant* plaintiffs successfully served defendant Bashar Al-Assad, President of Syria, via mail service. *See* Return of Service Affidavit, *Pilant*, ECF No. 30.

Judge Collyer severed Mrs. Shoham's claims from that action. Order ("Severance Order 1"), *Pilant*, Feb. 6, 2012, ECF No. 42; *see also* Order on Pl.'s Mot. for Clarification ("Severance Order 2"), *Pilant*, Feb. 28, 2012, ECF No. 45. Judge Collyer ordered that, in any new case filed by the severed plaintiffs, it would be required "that summonses be reissued and the new summonses and the amended complaint be served." Severance Order 1. The Judge granted to the severed plaintiffs, including Mrs. Shoham, "leave . . . to refile their claims with separate captions" and specified that "such new cases shall not be treated as related to the instant action." Severance Order 2.

Mrs. Shoham subsequently filed this action. Compl., ECF No. 3. Her new complaint is identical to the *Pilant* complaint except that it (1) bears a different caption, and (2) excludes facts and prayers for relief particular to other plaintiffs in *Pilant*. *Compare* Compl., *with* Compl., *Pilant*; *see also* Pl.'s Default Mot. 10–12 (showing that the two complaints are identical save for the aforementioned exclusions).

Meanwhile, service of the *Pilant* complaint was effected on four additional defendants through diplomatic channels: Iran, the Iranian Ministry of Information and Security ("MOIS"),

Iran's Revolutionary Guards ("IRGC"), and the Al Quds Force ("al Quds"). *See* Return of Service Aff., *Pilant*, Aug. 13, 2012, ECF No. 48 (service effected June 24, 2012).

Six months after filing her complaint in this action, Mrs. Shoham had failed to provide proof of service of the complaint on any defendants. Judge Jackson ordered her to show cause why the case should not be dismissed for want of prosecution. *See* Show Cause Order, Oct. 15, 2012, ECF No. 13. Mrs. Shoham responded with the two filings before the Court, as well as a memorandum in response to the order. Pl.'s Default Mot.; Pl.'s Substitute Service Mot.; Pl.'s Response. The case was subsequently reassigned by consent to the undersigned judge. [1]

## II.  MRS. SHOHAM IS NOT ENTITLED TO ENTRY OF DEFAULT BECAUSE DEFENDANTS HAVE NOT BEEN SERVED WITH THE COMPLAINT IN THIS ACTION

After Judge Collyer severed Mrs. Shoham's claims, she also ordered that in any new action filed after severance, "summonses be reissued and the new summonses and the amended complaint be served." Severance Order 1. Mrs. Shoham concedes that none of the defendants have been served with her new complaint in this action. *See* Pl.'s Default Mot. 12–13. Instead, she asks that the Court ignore Judge Collyer's order and deem service of process complete on six defendants—Iran, MOIS, IRGC, al Quds, Bashar Al-Assad and Syria[2] (hereinafter "*Pilant*-served defendants")—based on effective service of the *Pilant* complaint on these defendants. As explained below, the Court cannot grant this request.

---

[1] Most recently, Mrs. Shoham voluntarily dismissed one of her six claims—based on assault—apparently because of timeliness concerns raised by this Court. *See* Notice, ECF No. 21; *see also* Order 3, ECF No. 22 ("Mrs. Shoham has now voluntarily dismissed her assault claims based on the same incident . . . which might have been found untimely . . ."). There is some confusion created by the language used in the Notice and the Complaint it refers to. The Notice of Dismissal provides that Mrs. Shoham voluntarily dismisses "her claims for Assault under Count 2 of the Complaint." See Notice, ECF No. 21. Under "Count II" of the complaint, however, is Mrs. Shoham's "Survival Claim for Death of Yehuda Shoham." *See* Compl. 41. There is, confusingly, no "Count III" of the Complaint. There is, however a "Claim III," which is "For Assault." *See* Compl. 41-42. Accordingly, the Court will construe the Notice of Dismissal as dismissing "Claim III" of the Complaint, "For Assault."

[2] As "presidents of foreign states are 'states' for the purpose of determining service pursuant to § 1608," service of the *Pilant* complaint on Syria's leader Bashar Al-Assad qualifies as effective service on Syria. *See Baumel v. Syrian Arab Republic*, 550 F. Supp. 2d 110, 114 (D.D.C. 2008).

"[P]ersonal jurisdiction is 'an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication.'" *Sierra Club v. TVA*, 12-cv-1852, 2012 WL 5974034 at *1 (D.D.C. Nov. 29, 2012) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). "[B]efore a court may exercise personal jurisdiction over a defendant, there must be . . . a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Id.* (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).

A court has personal jurisdiction over a foreign state defendant in a § 1605A action where the defendant has been served under 28 U.S.C. § 1608. *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 n.5 (D.C. Cir. 2002). Where a plaintiff serves a complaint on a foreign state defendant under the FSIA, the foreign state defaults, and then the plaintiff files an amended complaint, service of the new complaint is only necessary if the changes are "substantial." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 46 (D.D.C. 2006); *Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 255 (D.D.C. 2005). For example, in *Belkin*, Judge Friedman did not require plaintiffs to serve an amended complaint on foreign state defendants in default where the amended complaint merely restated the allegations from their original complaint under the updated state sponsor of terrorism exception § 1605A. *Belkin*, 667 F. Supp. 2d at 19–20. Similarly, in *Blais*, this Court did not require plaintiffs to serve an amended complaint on foreign state defendants in default where the amended complaint only served to "put the remaining defendants on notice that the claims sought by plaintiffs were grounded in state substantive law as well as in the federal statutory scheme." *Blais*, 459 F. Supp.

2d at 46.  And, in *Dammarrell*, Judge Bates did not require plaintiffs to serve an amended complaint on foreign state defendants in default where the amended complaint did "little more than provide the particularity required" that plaintiffs must "identify a particular cause of action arising out of a specific source of law" other than the FSIA itself.  *Dammarrell*, 370 F. Supp. 2d at 255, 222 (quoting *Acree v. Republic of Iraq*, 370 F.3d 41, 58 (D.C. Cir. 2004)).

Unlike *Belkin*, *Blais*, and *Dammarrell*, however, Mrs. Shoham is not amending a complaint in an *existing* action, but has filed a *new* and *unrelated* one in which defendants are not yet in default.   Mrs. Shoham cites no case, and this Court is aware of none, in which a plaintiff was not required to serve process in a new, unrelated action against a foreign state defendant.

Mrs. Shoham's best case appears to be an unpublished 2003 opinion from the District of Minnesota by Magistrate Judge Arthur Boylan.  *See DIRECTV v. Barrett*, 2003 U.S. Dist. LEXIS 25897 at *4–5 (D. Minn. Oct. 2, 2003); *see also* Pl.'s Default Mot. 18–19.  In that case, the court severed the plaintiff's claims against various defendants, authorized plaintiff to refile new complaints against each, and stated that the plaintiff was "not required to re-serve pleadings on Defendants who have already been served" in the original action.  *Barrett*, 2003 U.S. Dist. LEXIS 25897 at *4–5.  Even setting aside the weakness of this source of authority, this case is not persuasive because it does not address service on foreign state defendants, which raises unique concerns and is subject to particular statutory requirements.  *See* 28 U.S.C. § 1608; *see also Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70, 71 (D.D.C. 2011) ("As a law that codifies sovereign immunity with limited exceptions, the FSIA envisions a process for litigating against foreign powers that respects the independence and dignity of every foreign state as a matter of international law while providing a forum for legitimate grievances.").  Moreover, even

in *Barrett*, Magistrate Judge Boylan ordered that, though service of process was not required, "Plaintiff [bore] the obligation to notify the Defendant of the new case number" of any new cases filed. *Barrett*, 2003 U.S. Dist. LEXIS 25897 at *4.

Accordingly, the Court will not deem service on these six defendants effected, and will DENY Mrs. Shoham's motion for default. Because Mrs. Shoham has filed a new action, she must effect service of process of the new complaint on all defendants as required under the FSIA, and the Court will order her to do so.

Before turning to the next issue, the Court pauses to recognize Mrs. Shoham's predicament of having to repeat the "exhaustive, costly and time consuming process" of serving the foreign defendants. *See* Pl.'s Default Mot. 19–20. The Court is not unsympathetic to Mrs. Shoham's position. *See Haim v. Islamic Republic of Iran*, 08-cv-520, 2012 WL 5384152 at *3 (D.D.C. Nov. 5, 2012); *Murphy*, 778 F. Supp. 2d at 73. The U.S. Department of State apparently charges a substantial fee for victims of terrorism who must use the State Department to serve Iran with FSIA-related papers. *See Schedule of Fees for Consular Services,* 75 Fed. Reg. 36532, 36534 (June 28, 2010) (setting $2,275 fee for processing FSIA judicial assistance cases). The imposition of these substantial fees imposes a significant burden upon victims of terrorism, particularly given that successful enforcement of these judgments is notoriously difficult and the prospects for recovering damages rather bleak. *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F.Supp.2d 31, 49 (D.D.C. 2009). Sadly, this is not the first time that the government has stationed itself in a position to undermine victims of terrorism in FSIA litigation. *See In re Terrorism Litig.*, 659 F.Supp.2d at 53. The federal government has promised victims of terrorism a forum and opportunity to seek compensation for their devastating losses, then apparently exploited this glimmer of hope to extract exorbitant fees from those victims, and then

actively undermined those victims' efforts to obtain satisfaction of legal and valid judgments in order to protect its own coffers. *See id.* Several years ago, this Court observed that "the great travesty in all this is that our political branches have essentially told victims of terrorism to continue their long march to justice down a path that leads to nowhere." *Id.* at 125. The government now taxes those victims for their travails, as well. *See Haim*, 2012 WL 5384152 at *3; *Murphy*, 778 F. Supp. 2d at 73.

### III.   SUBSTITUTE SERVICE IS APPROPRIATE

Mrs. Shoham moves the Court to allow substitute service by registered mail, return receipt requested, on defendants Bank Melli, Bank Saderat, and Iran Air, in Australia, Canada, France, Italy, Hong Kong, the Netherlands, Sweden, and the United Kingdom. The Court will GRANT that motion.

These three defendants are state-owned and their "core functions" are commercial, not governmental, so they qualify as "agencies or instrumentalities" of Iran. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994); *see also* Order 2, *Pilant*, ECF No. 49 (finding these three organizations constituted "agencies or instrumentalities" of Iran). Accordingly, service on these defendants is governed by 28 U.S.C. § 1608(b). Mrs. Shoham's Service Motion sufficiently demonstrates that she has not been able to effect service of process on these defendants under § 1608(b)(1) or (2). *See* Pl.'s Service Mot. 6–7. Subsection 1608(b)(3)(C) authorizes service to be made "by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . as directed by order of the court consistent with the law of the place where service is to be made" provided service is "reasonably calculated to give actual notice."

Mrs. Shoham has attempted unsuccessfully to serve each of these three defendants via international registered mail at their headquarters in Iran. *See* Certificate of Mailing, July 30, 2012, ECF No. 10; *see also* Pl.'s Service Mot. 4, 9. She now seeks this Court's permission to attempt service on these defendants at other locations. Pl.'s Service Mot. 10. For Bank Melli and Bank Saderat, Mrs. Shoham seeks to direct service to addresses on record with the U.S. Treasury Department Office of Foreign Assets Control ("OFAC") in countries that are signatories to the Hague Convention on Service. Pl.'s Service Mot. 5, 8. For Iran Air, Mrs. Shoham seeks to direct service to its worldwide offices in Hague Convention signatory countries, as listed on its official website. Pl.'s Service Mot. 5 n.3.

The Court finds that substitute service at these addresses would be "reasonably calculated to give actual notice" and so is appropriate under 28 U.S.C. § 1608(b)(3)(C). It remains to be decided whether the mode of service Mrs. Shoham requests—international registered mail—is acceptable at these locations.

Where American law allows or requires service to be made in a foreign country that is a signatory to the Hague Convention on Service, the Convention controls the method by which service may be effected. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) ("If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies."). Article 10(a) of the Convention provides that, if "the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention art. 10(a), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

The circuits are divided about whether this provision authorizes service of process by mail. *Compare Brockmeyer v. May,* 383 F.3d 798, 802 (9th Cir. 2004) (concluding, in light of the purpose and history of the convention that the word "send" in the convention should be read to encompass "serve"), *and Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir. 1986) (same), *with Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 173–74 (8th Cir. 1989) (concluding, based on the text of the convention, that "send" does not encompass "serve"), *and Nuovo Pignone v. Storman Asia M/V,* 310 F.3d 374, 384 (5th Cir. 2002) (same). Our circuit has not addressed the issue, but Judge Collyer recently adopted the approach of the Ninth and Second Circuits, citing the "history and purpose of the Convention" as discussed by the Ninth Circuit. *See* Order 3–4, *Pilant*, ECF No. 49 (collecting district court cases from other circuits supporting this position). This Court agrees with Judge Collyer that the Ninth Circuit's analysis of the purpose and history of the Convention is compelling on this point, *see Brockmeyer*, 383 F.3d at 802–03, and finds that the narrower reading of "send" is overly rigid and unjustified. Accordingly, the Court finds that the Convention allows for service of process via registered mail if "the State of destination does not object." *See* Hague Service Convention art. 10(a).

Mrs. Shoham seeks to effect service on defendants at their addresses in Australia, Canada, France, Italy, Hong Kong, the Netherlands, Sweden and the United Kingdom. All of these countries are signatories to the Convention and none of them object to service via international mail under Article 10(a). *See* Hague Conference on Private Int'l Law, Status Table, (hereinafter "HCCH, Status Table"), http://www.hcch.net/index_en.php?act= conventions.status&cid=17 (last visited Feb. 11, 2013) (listing all objections and declarations of signatories to the Hague Convention, and showing that Australia, Canada, France, Hong Kong, Italy, the Netherlands, Sweden and the United Kingdom have not objected to service via

international registered mail under Article 10(a)); *see also* U.S. Dep't of State, Travel.State.Gov, Judicial Assistance—Country-Specific Information, http://travel.state.gov/law/judicial/judicial_2510.html (last visited Feb. 11, 2013) (stating that Canada, Hong Kong, Italy, the Netherlands, Sweden, and the United Kingdom have no objection to service by international registered mail). The one partial exception appears to be Australia, which "does not object to service by postal channels, *where it is permitted in the jurisdiction in which the process is to be served.*" Australia Declarations, HCCH, Status Table (emphasis added). Mrs. Shoham seeks to effect service via international mail on Iran Air in Sydney, Australia, but did not provide any information indicating that this jurisdiction in Australia permits service by mail.

The Court will order that Mrs. Shoham may make substitute service on defendants Bank Melli, Bank Saderat, and Iran Air pursuant to § 1608(b)(3)(C) by serving a summons and copy of the Complaint (both documents prepared in English and Farsi) by registered mail, return receipt requested, through the Clerk of the Court, at the addresses identified in her Service Motion, with the exception of any addresses in Australia.

### IV.     MRS. SHOHAM HAS SATISFIED THE SHOW CAUSE ORDER

In October 2012, Judge Jackson ordered Mrs. Shoham to show cause why her case should not be dismissed for want of prosecution. Show Cause Order, ECF No. 13. Upon consideration of the response to this order, ECF No. 17, as well as various motions Mrs. Shoham has filed since that order, the Court concludes that she has demonstrated sufficient efforts such that the case should not be dismissed for want of prosecution.

## V.     CONCLUSION

For the foregoing reasons, the Court DENIES Mrs. Shoham's motion for default, GRANTS her motion for authorization of substitute service, and finds that she has satisfied the Order to show cause.  An order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on February 13, 2013.